Yes, Your Honor. Good morning. May it please the Court. I'm Thad Blank from the Federal Defenders, appearing for Mr. Danny Ray Henderson. I'd like to reserve two minutes for rebuttal, if I may. Yes, that clock is counting down, so just keep an eye. Thank you. In the context of a fairly complicated sentencing, the District Court here made one mistake. That is, it considered as a factual matter the allegation that Mr. Henderson committed a sexual assault when he was a juvenile in foster care. The source of that information that the District Court relied upon was the statement of Mr. Henderson's mother, Fern Henderson. She made a statement to the evaluator in the context of a psychosexual evaluation and then made a similar statement to the probation officer in a follow-up phone call. The problem is that Ms. Henderson was not speaking from personal knowledge. At the time that this alleged incident occurred, she had lost custody of Mr. Henderson. He was in foster care. So she was relaying, at best, information from another source. So we read the record, and we're familiar, I think, with what happened. But let me ask you, the district judge was careful at the end as he was doing, after he heard argument and this issue was brought to his attention, and it was used initially for an enhancement, correct? Correct. And the judge made it pretty clear that he wasn't going to rely on it for purposes of the enhancement because it was too unreliable. Correct. Correct? Right. But then he said, and I think this is what your problem is, is he said that, well, it's a historical fact. Right. And it was apparently there, or he didn't make it clear that he was disregarding it when he did his 20, when he did his, I forget, the overall sentence at the end. Correct? Correct. So how can we be, it looks like he tried to disregard it, didn't he? He, this is why this is a little bit tricky. The district court apparently concluded that this evidence deserved some weight, but it didn't reach the level of clear and convincing evidence to support a five-level enhancement. But the indications that he relied on it to some degree in the sentence imposed, and that's all that we have to show to get a resentencing. It doesn't have to be the primary factor or even a significant factor. If it increased the number of months imposed or if it looks like it probably did, then resentencing is warranted. And the indications that the district court did that, there's several strong indications that the district court did that. The most apparent is the one that Judge Paye has just referenced, that in the discussion of the 3553A factors, the district court went out of its way to say, I'm considering this as a factual matter. It doesn't reach the level of clear and convincing evidence, but in terms of the personal history and characteristics of the defendant, it's something that the district court apparently found relevant. There's no reason that he would have discussed that if he didn't think it had some bearing on the appropriate sentence. Did he say he was considering it or did he say it was just a historical fact? He said, I think the exact quote is, I'm considering it as a factual matter. But to recite it, I'm not, to recite it as a historical fact that's relevant under the history and characteristics suggests that it's something that is worth recounting, that it factors into the sentence. He said he would consider that as a factual matter, but would not use it, quote, to impose a five-level enhancement, unquote, because he did not believe it had been established by clear and convincing evidence. But he thought that it had, as a historical fact, it had been established by a preponderance of the probabilities. That's how I read the record, Judge Beyer. And it's important to note that it's the district judge that drew this distinction between clear and convincing evidence and preponderance of the evidence. That's not an argument that defense counsel made. So the sort of intellectual legwork that the district court did to, to draw a distinction that allowed it to consider this for some purposes, but prohibited the imposition of the enhancement is kind of circumstantial evidence that it thought that there was some value or some relevance to this as a factual matter. It would have been far simpler under Rule 32 for the district court to simply say, I'm not considering it for any purpose. And it could have been a much shorter allocution by the district court. Well, to refresh my recollection, is the only evidence in the record as to the prior child molestation, the mother's testimony that occurred, there was no conviction of it? There was, there was no conviction. And in fact, there was no record that a criminal, there was any criminal charge that resulted in any criminal charge. So the only evidence is the mother's statement first to the psychosexual evaluator, where she told the psychosexual, psychosexual evaluator that apparently he engaged in sexual conduct. And then in a follow-up phone call with the probation officer, she told the probation officer that, that he attempted to engage in sexual contact with, with an infant while in foster care. So that small discrepancy. And she said that, what to the psychosexual expert and to the probation officer? She did. Yes. And in short succession, the probation officer read that statement in the psychosexual evaluation and then followed up with the phone call to Ms. Henderson. I'm sort of pointing to one small difference in what she told the two individuals, which is in the first statement, she indicated that it was actual hands-on incident. And the second, she indicated it was an attempted incident, which is a small demonstration of the sort of reliability problems we have with these hearsay statements from somebody who's recounted. You know, but later on, just after he made the, after the district court made that statement, that it was a factual matter. Yes. He later, when he opposed sentence, said something to the effect that, that the defendant possesses a very substantial danger to the public. And there is a substantial need to deter him from engaging in this kind of conduct. What was that? What was the district court judge doing with that statement? Well, the district, two responses, Your Honor. One is, I wouldn't contest that there's other factors that the district court was very concerned with and probably more concerned with this, this incident in the past. But the district court signaled that the main factor driving the sentence imposed was this defendant's prior criminal history and prior conduct, and that that was why it was electing an above-guideline sentence. So the final place where it discusses the sentence is right at the end of the sentencing hearing. I think it's sort of recounting it for the statement of reasons for the probation officer. And the district judge went through and said, you know, I'm, I'm concerned about this prior conviction. That's a reason, you know, the fact that I haven't applied the enhancement, that doesn't make sense to me. It shouldn't be all or nothing. But I'm going to blunt that to some degree because I don't think another enhancement applies or should apply to the full extent. But then even after it goes through that discussion of the prior history, it says, in general, the defendant's past is what concerns me, and that's the sentence that I'm imposing. And in context, there's no other past other than the, other than this incident, this foster care incident, that the district court hadn't already discussed. If he would have said, if the district judge would have said under rule, was it rule 32? Rule 32. Rule 32. If he would have said, well, I'm, I'm, that fact, it's not reliable, I'm not going to consider it, and it won't affect my sentence. And then he said the same thing, gave the same sentence. Everything would be okay. If the district court had, had done that, we wouldn't have made this argument. But the indications are, in the record, are that the district court worked hard to salvage its ability to rely on this fact to some extent to impose a higher sentence maybe only as a matter of months than it otherwise would have. And that's, was a violation of Mr. Henderson's due process. Okay. Dr. Blank, may I ask you a question? We'll give you the time for your rebuttal. I'm confused. I have in my notes, quoting you, that there's no prior conviction for molestation of a child, and yet I see here in Judge Windmill's recitation, and the fact that he engaged in this conduct after already having spent time in the State prison for molesting a child. Is, is that incorrect on his part? I may have misspoke, Your Honor. There is one uncontested prior incident of sexual abuse that, that resulted in a conviction in 2002. My point was that, that in addition to discussing that conviction as a factor, he then turned to a general discussion of the defendant's background and how it suggested a propensity to reoffend, suggesting that there was more than just that conviction in the defendant's background that was driving his decision. Right. But there's, there's nothing else other than that one conviction and then the incident that allegedly happened in foster care, which he should not have said. And your position is that that prior conviction is not sufficient grounds under 3553A to arrive at the sentence that Judge Windmill arrived at? No, Your Honor. I, I just have to show that the improper fact, improper allegation was a factor in the sentence imposed. District, the district court was certainly allowed to consider that 2002 conviction, but he went beyond and the record indicates that he imposed a greater sentence than he would have if he had properly excluded the allegation of the foster care incident from the, the sentence that he imposed. Thank you. Good morning. Good morning. Good morning. May it please the court and counsel, my name is Anne Wick. I represent the United States. The government requests this court affirm Mr. Henderson's sentence for two reasons. One, the district court did not err in considering Mrs. Henderson's information about her son as part of Mr. Henderson's character and background, history and character. And number two, even if the court somehow did err in doing so, Mr. Henderson would have likely received the same sentence and it was permissible for such a sentence. That's a harder argument actually. The fact that he would have gotten the same sentence? Yeah, he didn't actually say that. Correct. Not, well, the district court came pretty darn close to saying that. He hinted at it on two specific locations, page ER-40 and ER-41 are the ones I noted. You wouldn't disagree with the fact that the district judge said the statements by the mother about the prior conduct when he was a kid, when he was younger, were unreliable. I would not disagree. And they couldn't be used for the enhancement. Correct. Right? So why should they be used for anything else? Because the standard of proof for the enhancement is clear and convincing, and the standard of proof for any other consideration is that preponderance standard. How does this even rise to the level of preponderance standard? This is hearsay on hearsay. You look at the identity of the person. She wasn't even in the courtroom to testify. I do not disagree with that. However, what we do know is we know who she is. She's not an anonymous informant. She's not a criminal informant. She's the defendant's, Mr. Henderson's, mother. She has been relatively supportive of him over his whole life, but notably after he was sent to prison for molesting her grandson, she had him come back and live with him, with her, excuse me, and remained, he was living with her at the time of his Federal offense that is at issue. And so as someone who is, one, a family member that's inclined to be a favorable witness for Mr. Henderson, but one who's demonstrated actual support of him in a very sensitive situation, she could have sided with her daughter and her grandson and cut Mr. Henderson out of her life completely, and she didn't. And that weighs in favor of giving her information a note of reliability. There's also nothing to suggest that she had any motive to provide inflammatory information to her son's detriment. And that's significant here in looking at the source of information. And one further note on that is Mr. Henderson relied on her information in a number of other capacities in the pre-sentence report. And some of the information from Ms. Henderson that was cited by the court as part of Mr. Henderson's history and characteristics were things like him helping her after he lived with her after getting out of prison. The fact that he had employment was another thing in that category. She provided a significant amount of background, especially about his foster care placement, about the fact that after this juvenile conduct, he was then sent to a home or a place for troubled youth. And so there's a great amount of information besides this one or two sentences worth of information that we're arguing about. Well, that goes to reliability, right? Don't you also have to show corroboration? And is that the point you just made? You see some corroboration besides the reliability of the statement itself? No. There's not extrinsic corroboration of her information. So I'm really arguing on the reliability of her as the source of it and motive. And that's enough reliability from your standpoint? Yes. So she wasn't a percipient witness to that incident, was she? Not as anything I've found. You can't tell. I mean, it's just some statement she makes to the probation officer. And the psychosexual evaluator. The fact that she's made the statement to two people related to the sentencing proceedings on specifically distinct occasions and that those statements were consistent, I think bolsters her reliability. Do you think what the judge is really trying to do is saying, this information is not going to affect the sentence? In so many words, the way I read it. But he didn't say that. He didn't. He didn't do the Rule 32. I can't get around the fact that he said he's considering the information as a factual matter. That's in the transcript. And I was at sentencing. I heard him say it myself. However, it was in the litany of history and characteristics. It was in the litany of other facts that I already mentioned. Why don't you just tell him, judge, just forget that. Just you've got enough here. You've got a prior conviction. You're concerned about the prior. That's plenty. This guy is a danger to the community. For two reasons. One, hindsight is 20-20. And two. Help the judge. Give him some, you know. That actually goes to part of why we're here on a plain error standard. The issue of whether or not there was sufficient reliability on a preponderance standard was not really before the court. Because the objection was to the enhancement, which carried a clear and convincing standard. For my purposes, as the attorney for the government sitting there at the time the sentence is imposed, the district court has already resolved the matter of the enhancement. And correctly, resolved against applying the enhancement on the clear and convincing standard. So, in my mind, that issue has been resolved. And there's no further objection. But the problem that I have with this is he said it's unreliable. But what you're saying is, well, he only said it's unreliable for purposes of establishing clear and convincing. Correct. And that's exactly what he said. But if it's unreliable, it should be, you can't use it for anything. I disagree. If the conversation. Why is it suddenly, if it's not reliable qualitatively, why does it suddenly become reliable when all you're doing is looking at it for preponderance of the evidence? Well, because there's no period after it's not reliable in the record. It's not reliable for purposes. This is not reliable information. That's not what the court said. The court said it was not reliable applying a clear and convincing standard. In fact, the court wrestled with that and initially was going to apply the enhancement and then talked himself out of it, which signals to me how close of a call it was. Which means then it's above a preponderance standard. That as the district court sitting, evaluating the entire record and Mr. Henderson in front of him, he found her information persuasive enough on a more preponderance standard, just not quite enough to get over clear and convincing. All right. Even if it was unreliable, isn't it also true that we would have to find that unreliable information was demonstrably made the basis of the sentence imposed, not just mentioned? The fact that the judge mentioned it and discussed it? Is that the end of the inquiry or does the defense have to show that it demonstrably was the basis for the sentence imposed? I believe that there has to be that additional finding of demonstrably made the basis. There's a couple different ways of phrasing that, but that still is a standard. I thought you had to show, all the defendant had to show that it was demonstrably was used in the, considered in the sentence. Not that it was the basis for the sentence. Well, that it probably had an effect on the sentencing or probably was the basis. Yeah. There's three different ways of saying that, that all the courts have approved, that all kind of get at the same thing, which is review of the whole record. But the point is you don't have to show what was the basis for the sentence. Correct. All right. Correct. As my time is running out shortly, what I'd like to leave the court with is this. In order to find clear error on the part of the district court here, this court has to have a definite and firm conviction that a mistake has been committed. And I submit to this court that it cannot be left with such a firm and definite conviction where the record as a whole in this case is replete with grounds supporting the 240-month sentence and repeated references by the district court about how troubled he was by the treatment, by the guidelines of that prior lewd conduct conviction. Because when the court signaled the heart of sentencing, that part of the quote that Your Honor was quoting to my opposing counsel, that was in the heart of sentencing type of area of the transcript where the court's really getting down to what matters the most here. And he talks about how the guidelines get it totally wrong. They don't give the lewd conduct conviction any more weight than a conviction for anything else that would have counted for the same three points. It could have been a burglary. It could have been a felony DUI. It could have been fraud. And if it was the same three points, it had the same net effect. That troubled the district court enough to reference that issue five times in the transcript, which is more times than he makes any factual findings about Ms. Henderson's information. And that's significant in the course of also the references to Mr. Henderson's past. My counsel's, my opposing counsel, excuse me, suggests that there's no other context for the word past than the juvenile misconduct. And that's simply not true. Because the district court was well aware that Mr. Henderson denied responsibility for that hands-on offense. He was well aware that Mr. Henderson served an entire ten-year sentence on that conviction. And that within four years, he returned to the Federal offense of sharing child pornography. And then within the context of that offense, demonstrated a continued sexual interest in minor children in that exchange with another person. That justifies the 240-month sentence. Okay. All right. Thank you. Thank you, Your Honor. One quick point on the reliability of the statement. The government emphasizes that there's no reason to doubt Ms. Henderson's truthfulness. But another problem with hearsay, a reason we usually like it tested by cross-examination, is reliability. And in this instance, we know this is her recollection of something that allegedly happened 30 years ago when she was not in a, had lost custody of the child. So there's some reasons to doubt that she's a reliable witness, even if we don't know of any incentive for her to be. Well, on the other hand, you know, it's kind of odd to say that the kid's mother would, the defendant's mother would make up a story like this. Right. I don't think there's anything in the record that suggests that she was lying or had an incentive to lie. But the point is that she's a woman who has some problems. She's talking about something that happened 30 years ago when she was unable to hold her household together and keep her child in her house. And so this is her account of what an unknown person told her 30 years later. And there's a minor but kind of important inconsistency between the two statements she makes to the psychosexual evaluator and then to the probation officer in terms of whether this was an actual sexual assault or an attempted sexual assault. But the bigger problem really is that we don't know anything about the first hearsay declarant. We don't know the who, what, why, when, or where. And it's significant that the government acknowledges that there's no corroboration for this statement, because at least two of this Court's cases, Egg and Ponce, say that there has to be some extrinsic corroboration in order for a statement to be considered reliable. So can it be reliable for purposes of preponderance of the evidence but not reliable for clear and convincing? It cannot. There's a threshold question whether there's any indicia of reliability for it to be considered at all. And it doesn't get past that first hurdle. So it can't be considered for any purpose. The district court did conclude or thought this incident had happened by preponderance of the evidence. It would be surprising if in the context of a child pornography sentencing, that allegation didn't factor into the sentence that the district court imposed, the fact that the person before them, they thought had first committed a sexual assault when they were a child. The record indicates that in this case, that was one of the factors that the court considered when imposing this particular sentence. Not the biggest, but it drove the sentence to some extent. And that's enough to warrant resentencing. Thank you. Okay. Thank you, counsel. We appreciate your arguments. The matter is submitted.
judges: Paez, Bea, Anello